# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BONUMOSE, INC., a Delaware Corporation,<br>1500 State Farm Blvd.<br>Charlottesville, VA 22911<br><br>            Plaintiff,<br>   vs.<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br>c/o Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001;<br><br>DR. ROBERT M. CALIFF, in his official<br>capacity as Commissioner of Food and Drugs,<br>U.S. Food and Drug Administration<br>10903 New Hampshire Avenue<br>Silver Springs, MD 20993,<br><br> and<br><br>THE UNITED STATES OF AMERICA<br>10903 New Hampshire Avenue<br>Silver Springs, MD 20993;<br><br>            Defendants. | Civil Action No. ——————1:23-cv-00645<br><br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Bonumose, Inc. ("Bonumose") ~~alleges~~submits this First Amended Complaint alleging as follows:[1]

## I.    NATURE OF ACTION

1.    Plaintiff Bonumose is a food ingredient manufacturer specializing in the production

---

[1] Plaintiff submits this First Amended Complaint ("FAC") with the Defendants' written consent under Fed. R. Civ. P. 15(a)(2).

of rare monosaccharides that have beneficial effects on human health.

2.     Bonumose developed a patented, proprietary method of production for a naturally-occurring sweetener called D-tagatose ("Tagatose") (CAS Registry No. 87-81-0).  Tagatose is an alternative to conventional sugar but Tagatose does not spike blood glucose levels or increase risk of dental caries, is not generally digestible, and provides 63% fewer calories than conventional sugar.  As a result, KetogenicCertified.com approved Bonumose's Tagatose as "Ketogenic Certified."[2]  ~~Though~~Although it tastes like regular sugar, Tagatose functions as a dietary fiber in the body.

3.     The Food and Drug Administration ("FDA") amended regulations related to the Nutrition Facts Panel for food labeling in 2016.  *See* 81 Fed. Reg. 33741 (July 26, 2016).  The FDA's 2016 final rule required disclosure of "added sugars."  *See* 21 C.F.R. § 101.9(c)(6)(iii).  The purpose of FDA's regulatory change was to discourage consumers from purchasing products that contained elevated sugar levels ~~of sugars that are~~ associated with diet-related health problems, such as metabolic disorder, obesity, and dental cavities.  The agency determined that avoidance of such products would promote better dietary outcomes including reduction in diet-related health problems~~, and~~.  It ruled that ~~requiring companies to disclose~~mandatory disclosure of "added sugars" would cause consumers to purchase and consume less sugar

4.     In 21 C.F.R. § 101.9(c)(6)(iii), the term "added sugars" applies to all "mono- and disaccharides." Tagatose is a monosaccharide; however, Tagatose does not cause any of the health problems associated with ~~excess~~ consumption of conventional sugar.  _In fact, Tagatose is associated with positive health outcomes, including, *inter alia,* gut health, metabolic health, and

---

[2] Products that KetogenicCertified.com approve as "Ketogenic Certified" have been tested on individuals to ensure that they do not spike glucose and or stop ketosis, which is a metabolic state that occurs when the body uses fat for energy instead of glucose.

oral health~~, and others~~. Therefore, Bonumose petitioned the FDA in April 2018 for an exemption from the FDA's mandatory disclosures so that food labels could remove Tagatose from the "added sugars" disclosures.

5.      In October of 2020, the FDA granted a~~a~~n exemption petition ~~of~~for another similarly-situated monosaccharide called "Allulose."  The FDA stated publicly that products such as Allulose and Tagatose "are metabolized differently than traditional sugars, are not associated with dental cavities, provide fewer calories, and may lead to lower blood glucose and insulin levels after a meal."  Although the FDA chose to exercise "enforcement discretion" ~~over~~to give Allulose ~~and permit~~an exemption from "sugars" disclosures, in May 2022 the FDA denied Bonumose's petition for comparable treatment ~~for~~of Tagatose.  The FDA's denial was arbitrary and capricious agency action that selectively created a competitive advantage for Allulose over Tagatose ~~for one or more~~in the market ~~participants.~~.  The FDA's bases for denial of Bonumose's petition ~~lacked~~lack scientific merit.  The FDA failed to consider key facts.

6.      FDA's denial of Bonumose's petition results in food labels that are false and/or misleading for Tagatose-containing products.  The denial compels Bonumose and any food producer to count Tagatose under "added sugar" grams, which deceives the public into mistakenly thinking Tagatose is associated with poor health outcomes.  That forced speech violates the First Amendment to the United States Constitution.  The exemption requested by Bonumose was necessary to avoid ~~the very~~misleadingness and consumer confusion~~ which results in misleadingness.~~.  The government-mandated disclosures~~ therefore~~ compel misleading speech in violation of Bonumose's First Amendment rights.

7.      Bonumose therefore seeks relief in the form of a declaration that food labeling regulations in 21 C.F.R. 101.9(c)(6) as applied to Tagatose are in violation of the First Amendment.

Bonumose also requests that the Court deem the FDA's May 2022 denial letter to be in violation of the Administrative Procedures Act (5 U.S.C. § 706(2)(A)) because it is arbitrary, capricious, and contrary to law.  Bonumose seeks an injunction compelling the FDA to act in accord with Bonumose's 2018 citizen petition, in part, by exempting Tagatose from mandatory "added sugars" disclosures on food labels——by regulation amendment and/or enforcement discretion——and/or permitting alternate disclosures for "beneficial sugars."  *See* Docket No. FDA-2018-P-0874-0023 (April 18, 2018) (amended Citizen Petition from Bonumose) (Exh. A).

## II.    <u>JURISDICTION AND VENUE</u>

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1346 (jurisdiction where the United States is a defendant).

9.    The FDA's May 18, 2022 Denial Letter is final agency action.  That Denial Letter fixes legal obligations for Bonumose and other food companies under 21 C.F.R. § 101.9(c)(6), and thereby imposes legal consequences for violation of same.  The FDA's Denial Letter marks the end of FDA's administrative process concerning Bonumose's citizen petition.  Bonumose suffers immediate and ongoing economic and constitutional injuries following FDA's denial of the petition.

10.    There is an actionable and justiciable controversy between Plaintiff and Defendants requiring resolution by this Court.

11.    This Court has personal jurisdiction over Defendants.

12.    Venue is properly vested in this Court under 28 U.S.C. § 1391(e) because the Defendant FDA resides in this district and a substantial part of the events giving rise to this action occurred in this district.

## III.    <u>PARTIES</u>

13.     Bonumose Inc., a Delaware corporation ("Bonumose") is late-stage startup food ingredient manufacturer based near Charlottesville, Virginia.

14.     The FDA is an agency within the Executive Branch of the United States Government, organized within the Department of Health & Human Services.  The FDA is an agency within the meaning of 5 U.S.C. § 701(b)(1).

15.     Dr. Robert M. Califf, M.D., is the Commissioner of the Food and Drug Administration.  As FDA Commissioner, Dr. Califf oversees the FDA's various divisions and centers, including the Center for Food Safety and Applied Nutrition (CFSAN).

## IV.     FACTS

### A. Tagatose

16.     Plaintiff Bonumose is a food ingredient innovator and manufacturer that specializes in the ~~affordable~~ production of Tagatose and other naturally-occurring, rare monosaccharides that benefit health and can be used in lieu of traditional, commonly-consumed sugars, such as sucrose or high fructose corn syrup, without driving up food prices.

17.     Unlike conventional sugars, Tagatose confers significant health benefits while retaining the favorable taste and technical properties of more commonly consumed sugars.

18.     Tagatose can be used as a nutritive sweetener, flavor enhancer, humectant, texturizer, and stabilizer in a variety of foods, including, but not limited to: tabletop sweeteners, ready-to-eat breakfast cereals, diet soft drinks, non-diet soft drinks, confectionary, meal replacement drinks, meal replacement mixes, cakes and pies, frostings, ice cream and frozen yogurt, yogurt, chewing gum, jelly and pudding, condiments and sauces, coffee mix powder, biscuits, cookies, cereal bars, ready-to-drink teas, energy or nutrient fortified bars, regular and dietetic hard candies, and dietetic soft candies.

5

19.    Bonumose's patented manufacturing method produces Tagatose from plant-based starch via a unique enzymatic conversion.  *See* GRAS Notice 977 at 7-8 (Bonumose's GRAS Notification for D-tagatose Produced by a Novel Enzymatic Cascade) (~~Rev'd~~rev'd Oct. 26, 2020) (Exh. B).

20.    In 2020, Bonumose affirmed that Tagatose is generally recognized as safe ("GRAS") for use as a nutritive sweetener, flavor enhancer, humectant, texturizer, and stabilizer in a variety of food categories, including, but not limited to, soft drinks, ice cream, candies, and cookies.  *See* Exh. B; Exh. C at 1-2 (the FDA's response to Bonumose's GRAS notification). Tagatose previously had been affirmed as GRAS in 2001 and 2010 by other companies. Tagatose is well-tolerated in the human diet, with transient gastrointestinal symptoms such as diarrhea, flatulence, and bloating observed in some subjects, similar to effects of some soluble fiber. However, those transient symptoms are lower for Tagatose than in equivalent sugar substitutes, including Allulose.

21.    Based on the information Bonumose provided in its GRAS notification and the other information available to the agency, the FDA stated on October 21, 2021 that it had "no questions ... regarding Bonumose's conclusion that Tagatose is GRAS under its intended conditions of use."  *See* Exh. C at 4.

22.    Tagatose ~~is an outstanding food ingredient that~~ provides many of the attributes of regular sugar, including sugar-like sweetening effects and attractive flavor.  Like sucrose, Tagatose can play a role in food production beyond making foods taste better, including water activity reduction, freezing point depression, bulk, texture, caramelization, and frosting. Tagatose does so without adverse health consequences while also adding positive health effects.  Tagatose acts like dietary fiber in the human gut, feeds beneficial gut bacteria, and contributes to gut health, along

6

with other positive health outcomes.  Tagatose has been scientifically shown to: (a) aid in glycemic control; (b) reduce risks of tooth decay; (c) function as a prebiotic; (d) reduce cardiovascular disease risk factors; (e) assist in body weight control; (f) support hematological health; and (g) function as an antioxidant.  *See* Exh. A at 6-11.  Tagatose also contains about one-third of the calories of conventional sugars.  Under U.S. and European law, foods containing Tagatose can carry a dental health claim. Under European law, Tagatose can carry a blood glucose lowering health claim.

23.     Bonumose created a proprietary manufacturing process that substantially lowers the cost of manufacturing plant-based Tagatose.  Bonumose's patented production process could potentially lower the cost of Tagatose below most common sugar substitutes.  Bonumose has been prepared to scale up production to meet anticipated commercial needs for this market disrupting ingredient.

**B.  FDA's 2016 Revisions to Food Labeling Regulations**

24.     The FDA updated its food nutrition labeling regulations in 2016, which affected foods that contain Tagatose as an ingredient.  *See* 81 Fed. Reg. 33741 (July 26, 2016) (hereinafter, "Final Rule").  The FDA requires that certain nutritional information be conveyed to consumers on food products through "Nutrition Facts" panels.  That information includes disclosures such as calories, protein content, fat content, etc.   In 2016, the FDA substantially changed those requirements, including changes to the reporting of sugar content in food products.

25.     The Final Rule changed "Sugars" to "Total Sugars."  *See* 21 C.F.R. 101.9(c)(6)(ii). Under section 101.9(c)(6)(ii), "Total Sugars" means "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."  To compare, for ingredient labeling purposes, "sugar" only means "sucrose."  *See id*. at § 101.4(b)(20).

26.     Further, the Final Rule: (1) mandated that "Added Sugars" be declared as a subcomponent of "Total Sugars," (2) established a Daily Reference Value ("DRV") for "Added Sugars," and (3) required the percent Daily Value ("DV") be declared for "Added Sugars."  *See id*. at § 101.9(c)(6)(iii).  "Added Sugars" are sugars that "are either added during the processing of foods, or are packaged as such, and include sugars (free, mono and disaccharides), sugars from syrups and honey, and sugars from concentrated fruit or vegetable juices," with some limited exceptions for the latter.  *See id*. at § 101.9(c)(6)(iii).

27.     To compare, "sugar alcohols," which are defined, in part, as the sum of saccharide derivatives in which a hydroxyl group replaces a ketone or aldehyde group (e.g., mannitol or sorbitol), are included in the declaration of "Total Carbohydrate" on the nutrition label of foods, but are not considered "sugars" for purposes of the FDA's food labeling regulations.[3]  *See id*. at § 101.9(c)(6)(iv).[4]  Moreover, a separate declaration of sugar alcohols in the "Nutrition Facts" label is voluntary, not mandatory.  *See id.*  Tagatose has more health benefits than sugar alcohols, but the FDA gives Tagatose unfavorable treatment compared to sugar alcohols. Notably, sugar alcohols typically are produced by producers of high fructose corn syrup and other corn sweeteners.

28.     The FDA's decision to require an "Added Sugars" declaration on nutrition labels

---

[3] In 1993, the FDA explained its rationale for exempting sugar alcohols from the definition of "sugars" as follows:

> FDA is persuaded that sugar alcohols have metabolic effects different than sugars, have a history of being considered to be sugar substitutes rather than as sugars, and have a role in contributing to dental health. FDA also acknowledges that the proposal to define sugar alcohols as sugars for nutrition labeling purposes is inconsistent with the nutrition labeling practices of other countries. Thus, FDA is modifying § 101.9(c)(6)(ii) to remove sugar alcohols from the definition of 'sugars' for nutrition labeling. The agency is doing so in recognition of their usefulness as sugar substitutes in reducing the cariogenic potential of foods.

58 Fed. Reg. 467, 2099 (Jan. 6, 1993). All of these same things are true of Tagatose.

[4] Similarly, trisaccharide sugars, which are sugars that yield, on complete hydrolysis, three monosaccharide molecules, are not "sugars" under the FDA's nutrition labeling because of their degree of polymerization (DP3), even if they are metabolically similar to traditional sugars like glucose.

was largely based on evidence the agency found of the harmful effects of traditional sugars as well as the FDA's publicly-stated desire to help consumers maintain healthy dietary practices. *See* 81 Fed. Reg. at 33812-13; *see also id*. at 33768 (explaining the FDA considered "the evidence related to a healthy dietary pattern that is associated with a reduced risk of [cardiovascular disease], consumption data showing that Americans are consuming too many calories from added sugars, evidence showing that it is difficult to meet nutrient needs within calorie limits if one consumes too many added sugars, and evidence showing that increased intake of sugar-sweetened beverages is associated with greater adiposity in children").

29.     An example of an "added sugar" disclosure appears below (added sugars disclosure highlighted):[5]



This display would appear on product packaging available to consumers at the point of sale.

---

[5] Source:  FDA Examples of "New Nutrition Facts Label," *at* https://www.fda.gov/media/99203/download (last accessed June ~~6, 2022~~2, 2023).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

30.     The FDA's mandatory "added sugars" disclosure was designed in part to address increased obesity rates.  The expressed purpose of "added sugars" disclosures was to discourage the purchase and consumption of products that contained higher amounts of conventional sugars that are associated with poor health outcomes and do not have nutritional value.  Data shows that consumers now place heavy emphasis on "added sugars" when making purchasing decisions.  *See, e.g.,* FDA-2015-P-1201-0005 (CHPR Qualitative Consumer Group Research).  The express connotation intended by FDA's "added sugars" disclosures is that a product containing substantially higher values of "added sugar" is less healthy.  Requiring Tagatose-containing products to disclose "added sugars" therefore conveys a misleading impression that such products are unhealthy or less healthy, when in fact the opposite is true.  Thus, the FDA is thwarting its own stated goal of educating consumers so that they can make informed choices about food, and is discouraging manufacturers from reformulating their products to use healthier ingredients such as Tagatose.  This is tragic in a world in which the global cost of diet-related health problems exceeds the cost of global food consumption (*see, e.g.*, United Nations Food Systems Summit 2021, Scientific Group, "The True Cost and True Price of Food," at 15).

31.     Traditional sugars most commonly consumed, such as sucrose and high-fructose corn syrup, "are associated with an increased risk of dental caries, have 4 calories per gram, and cause an increase in blood glucose and insulin levels after consumption." *See* 85 Fed. Reg. 66335, 66337 (Oct. 18, 2020) (Notice; Request for Information and Comments) (hereinafter, "RFI").

32.     The FDA based its new "sugar" labeling requirements on the nutritional properties of conventional sugars such as sucrose or high-fructose corn syrup.  Those sugars provide the body 4 calories per gram, and are generally considered to be "empty" calories because they cause elevated spikes in blood glucose levels with little to no nutritional benefits, contribute to obesity,

and increase risk of dental caries (i.e., cavities).

33.     When the FDA revised its nutritional labeling regulations for purposes of declaring sugar grams in foods, it defined "sugars" to include all "free mono- and disaccharides."  But the FDA failed to consider whether rare monosaccharides such as Tagatose should be included within that definition.  To compare, for ingredient labeling purposes, the FDA defined "sugar" to refer only to sucrose.  *See* 21 C.F.R. § 101.4(b)(20).

34.     Because the Final Rule defined "Total Sugars" and "Added Sugars" based on chemical structure, not physiological effects, the Final Rule treats rare monosaccharides such as Tagatose the same as traditional sugars.  Thus, when a food contains a non-traditional monosaccharide such as Tagatose as an ingredient, its nutrition label must declare the ingredient as an "Added Sugar" and include it in the "Total Sugars" declaration even though the sweetener is metabolized differently than traditional sugars and causes none of the serious adverse physiological effects associated with excess consumption of traditional sugars.

35.     Prior to and after it promulgated the Final Rule, FDA "received multiple requests from industry to treat sugars that are metabolized differently than traditional sugars as distinct from traditional sugars for purposes of nutrition labeling."  *See* 85 Fed. Reg. at 6637.  According to the FDA:

> [S]ome asked that we exempt certain sugars from inclusion as a carbohydrate, sugar, or added sugar on the Nutrition Facts label for foods and beverages (*see, e.g.*, Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201); some asked that we use a lower general factor for the caloric value of certain sugars (*see, e.g.*, Citizen Petition Submitted by The Food Lawyers Requesting the Use of a General Factor of 0.4 Calories Per Gram of Allulose on the Nutrition Facts Label, July 12, 2016, Docket Number FDA-2016-P-2030); and others asked that we define "Total Sugars" as the sum of all free mono- and disaccharides that contain at least one unit of glucose or fructose (*see, e.g.*, Citizen Petition Submitted by

11

Bonumose LLC for Consideration of D-tagatose as Dietary Fiber, November
19, 2018, Docket Number FDA-2018-P-4454).

*Id.  See also* Exh. D-F (Citizen Petitions from Tate & Lyle, The Food Lawyers, and Bonumose
respectively).  On April 18, 2018, Bonumose also submitted an amended Citizen Petition (Docket
Number FDA-P-0874) asking FDA to exempt Tagatose from being classified as an "Added Sugar"
on the Nutrition Facts Panel on foods and beverages, and to amend 21 C.F.R § 101.9(c)(6)(iii)) to
include a voluntary disclosure of Tagatose, similar to that which is provided for sugar alcohols
under 21 C.F.R. § 101.9(c)(6)(iv).  *See* Exh. A (hereinafter, "D-Tagatose Citizen Petition").

### C.  Tagatose Functions as Dietary Fiber, Not Sugar

36.    Warning consumers that products contain "added sugar" in the form of Tagatose is
contrary to the Agency's stated interest in steering consumers away from unhealthy, "sweetened"
products.  Because Tagatose functions like dietary fiber in the gut, has substantially fewer calories
than traditional sugars, is beneficial to oral health, and does not contribute to blood glucose
increases on insulin spikes, the use of Tagatose as a sweetener would benefit consumers in ways
traditional sugars do not and should therefore not be misleadingly subsumed within the title
"Added Sugars."[6]  Consumers are entitled to truthful rather than misleading information about
Tagatose.

37.    Although Tagatose is chemically a monosaccharide, Tagatose is metabolized by the
body differently than traditional sugars (e.g., Tagatose does not provide as much caloric energy),
and it does not have the same effects, i.e., Tagatose is not associated with dental caries, provides

---

[6] *See, e.g.,* Roy, Sohini et al. "Tagatose as a Potential Nutraceutical: Production, Properties, Biological Roles,
and Applications." *Journal of food science* vol. 83,11 (2018): 2699-2709 (collecting references supporting beneficial
effects and explaining that, "D-tagatose has attracted global attention because of its low caloric value, prebiotic
potentiality, and antidiabetic property in addition to its capability to prevent the lifestyle related diseases").

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

fewer calories, and does not raise blood glucose and insulin levels like traditional sugars.[7]  *See* 85 Fed. Reg. at 66337.

38.     As a non-digestible dietary ingredient, Tagatose fits some definitions of fiber.  The FDA has relied on the Institute of Medicine's (IOM) definition of fiber in administrative publications.  *See* Institute of Medicine of the National Academies. Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients). Washington, DC: National Academies Press; 2002.[8]  In 2001, the IOM acknowledged that non-digestible monosaccharides, like Tagatose, ~~could be classified~~are classifiable as fiber:~~-~~ "Because these mono- and disaccharides are nondigestible or poorly absorbed in the human small intestine, they could be classified as fiber."  Institute of Medicine (US) Panel on the Definition of Dietary Fiber and the Standing Committee on the Scientific Evaluation of Dietary Reference Intakes. Dietary Reference Intakes Proposed Definition of Dietary Fiber. Washington (DC): National Academies Press (US); 2001 at 13, 16 ("IOM Rep.").[9]

39.     Tagatose is a "fiber" under several ~~other~~ authoritative definitions.  It has the properties of ~~a~~ soluble fiber.  According to the Harvard University School of Public Health:  "Fiber is a type of carbohydrate that the body cannot digest.  Though most carbohydrates are broken down into sugar molecules, fiber cannot be broken down into sugar molecules, and instead it passes through the body undigested."[10]

---

[7] Unlike traditional sugars that the body breaks down into glucose in the blood, Tagatose does not increase blood glucose levels.  *See* Exh. A at 16.  In addition to Tagatose, Allulose (another rare monosaccharide) and isomaltulose (a disaccharide) are metabolized in the body differently than traditional sugars.  *See* 85 Fed. Reg. at 66337.

[8] ~~*Available at* https://www.nationalacademies.org/our-work/dietary-reference-intakes-for-macronutrients (last accessed Aug. 1, 2022).~~ *Available at* https://www.nationalacademies.org/our-work/dietary-reference-intakes-for-macronutrients (last accessed June 2, 2023).

[9] *Available at* https://~~www~~pubmed.ncbi.nlm.nih.gov/~~books/NBK223587/   doi~~25057569/ (DOI: 10.17226/10161~~)~~ (last accessed ~~Aug. 1, 2022~~June 2, 2023).

[10] https://www.hsph.harvard.edu/nutritionsource/carbohydrates/fiber/ (last accessed ~~Aug. 1, 2022~~June 2, 2023).

40.     According to the American Association of Cereal Chemists (AACC): –"Dietary fiber is the edible parts of plants or analogous carbohydrates that are resistant to digestion and absorption in the human small intestine…"[11]  The AACC has also explained that, "Resistance to digestion and absorption is the key to dietary fiber's unique position in the human diet."[12]  The positive health effects of dietary fiber can be linked, in part, to ~~that~~its resistance to digestion and absorption. *Id.*

41.     Similarly, due, in part, to its resistance to absorption and digestion, Tagatose has many beneficial physiological effects. *See, e.g.*, Exh. A at 5-9 (reciting various health benefits of Tagatose, such as reducing cardiovascular disease risk).  For example, Tagatose acts like a prebiotic dietary fiber in the body because it is a non-digestible carbohydrate that confers nutritional benefits by inhibiting the growth of harmful microorganisms and promoting the growth of beneficial microorganisms that produce short-chain fatty acids.  *See* Exh. F.  Other beneficial physiological effects include, but are not limited to, decreased post-prandial glucose and insulin levels, decreased fasting glucose and insulin levels, decreased total and LDL cholesterol levels, increased HDL cholesterol levels, improved bowel function, and decreased energy intake. *See id*. at 3-4.

42.     The FDA has approved a health claim regarding Tagatose and the reduction in risk of dental caries.  *See* 21 C.F.R. § 101.80.  Approval of health claims are rare and require scientific consensus that a product provides the claimed benefit.

43.     Similarly, the European Food Safety Authority ("EFSA") permitted health claims regarding how consumption of Tagatose-containing foods or drinks "induces a lower blood

---

[11]    ~~http~~https://www.~~aaccnet~~cerealsgrains.org/~~initiatives~~resources/definitions/Pages/DietaryFiber.aspx   (last accessed ~~Aug. 1, 2022~~June 2, 2023).

[12]  *See* ~~http~~https://www.~~aaccnet~~cerealsgrains.org/~~initiatives~~resources/definitions/Documents/DietaryFiber/DFDef.pdf (last accessed ~~Aug. 1, 2022~~June 2, 2023).

glucose rise after their consumption compared to sugar containing foods/drinks" and "contributes to the maintenance of tooth mineralisation." *See* Exh. G at 27 (cited by Exh. A at 21); Exh. H (EFSA J. 2011;9(4):2076, "Scientific Opinion on the substantiation of health claims related to sugar replacers"); Exh. I (EFSA J. 2011;9(6):2229, "Scientific Opinion on the substantiation of health claims related to intense sweeteners").

44.     The EFSA expressly found that sweeteners such as Tagatose have low ~~glycaemic~~glycemic properties, reduced speed of digestion and absorption resulting in lower ~~glycaemic~~glycemic response, and post-prandial blood glucose. *See* Exh. H at 2 (concluding that "a cause and effect relationship has been established between the consumption of foods/drinks containing … D-tagatose … instead of sugar and reduction of post-prandial blood glucose responses … as compared to sugar-containing foods/drinks.").

45.     The EFSA found that, "the effects of D-tagatose … on post-prandial blood glucose and insulin responses have been shown to be about 3% of those of glucose on a weight by weight basis when administered in liquid solution." Exh. H at 8-9.  The basis for that benefit was owed "to [the] reduced/delayed digestion/absorption and/or to a decrease in the amount of available carbohydrates, and that the consumption of foods/drinks in which … D-tagatose … replaced sugars induced lower post-prandial ~~glycaemic~~glycemic and ~~insulinaemic~~insulinemic responses than sugar-containing foods/drinks." *Id.* at 9.

46.     The EFSA's findings support the conclusion that it is misleading to label Tagatose an "Added Sugar" on the Nutrition Facts Panel because Tagatose is not metabolized in the body as a conventional sugar, and labeling Tagatose as a conventional sugar undermines the FDA's regulatory goals of directing consumers toward healthier products.  Indeed, because Tagatose tastes more like sucrose than any other alternative, and works in food production most like sucrose,

15

Tagatose could replace sucrose to add health benefits while maintaining desirable taste, flavor, and texture.  As such, Tagatose has a unique role to play in enabling better-for-you foods consumers actually will eat, but the FDA position is a roadblock. Breakfast cereal companies, school lunch producers, and other food manufacturers could "drop in" Tagatose in replacement of sucrose, but they will not do so if Tagatose misleadingly must be counted under "sugar" grams.

/ / /

/ / /

**D.  FDA Exemption of Allulose (A Similarly Situated Sugar Alternative)**

47.     "Tate & Lyle PLC" ("T&L") is a global provider of food and beverage ingredients. T&L has its headquarters in London, England.

48.     In 2015, T&L filed a citizen petition with FDA seeking to exempt another rare monosaccharide, Allulose, from the FDA's "sugar" disclosures.  *See* Exh. D.  T&L provided evidence that Allulose, like Tagatose, was metabolized differently than conventional sugars.  *See id*. at 1 (arguing that, "Allulose is different from other sugars in that it is not metabolized by the human body, it has negligible calories…, it does not contribute to increases in blood glucose or insulin levels, and if included as carbohydrates and sugar (added sugar) on the Nutrition Facts label, it would lead to confusion to the consumer, particularly consumers with diabetes or those consumers otherwise concerned with accurately monitoring blood glucose").  T&L requested that, "Allulose be exempt from being included as a carbohydrate, sugar, or added sugar in the Nutrition Facts label on foods and beverages." *Id*.

49.     Following T&L's Allulose petition, the FDA received additional information from industry indicating the strength of T&L's position.  Industry provided the FDA facts showing that rare sugars such as Tagatose and isomaltulose are likewise metabolized differently in the body

than conventional sugars.  The FDA publicly acknowledged this, stating online:

> Some sugars used by manufacturers in foods and drinks you buy may be different than what you traditionally think of as sugar, like sucrose or table sugar. These sugars meet the chemical definition of a sugar, but they are metabolized, or used by your body, differently than traditional sugars like sucrose. For this reason, they may not have all of the same effects in the body as traditional sugars, which are associated with an increased risk of cavities, have 4 calories per gram of sugar, and cause an increase in blood glucose and insulin levels after they are consumed. Some sugars that are metabolized differently than traditional sugars are not associated with dental cavities, provide fewer calories, and may lead to lower blood glucose and insulin levels after a meal. **Allulose, D-tagatose, and isomaltulose are examples of sugars metabolized differently than traditional sugars that the FDA is aware of that are being used by the food industry**.
>
> Certain of these sugars may be treated differently than traditional sugars on the Nutrition Facts label, which lists Calories, Total Carbohydrates, Total Sugars and Added Sugars.

*See* FDA, "Sugars That Are Metabolized Differently Than Traditional Sugars" (Exh. J) (emphasis added).

50.    In 2019, the FDA granted, in part, T&L's petition to exempt Allulose from sugars and carbohydrate labeling disclosures through a draft guidance document.  Although the FDA did not amend its labeling regulations, the agency issued a "Draft Guidance" informing industry that FDA would exercise "enforcement discretion" over Allulose-containing products, effectively creating a labeling exemption for Allulose from "Added Sugars" disclosures.  *See* 84 Fed. Reg. 16272 (April 18, 2019) (announcing the availability of the Draft Guidance); Exh. K (Draft Guidance).

51.    FDA issued a Final Guidance the following year, which it entitled, "The Declaration of Allulose and Calories from Allulose on Nutritional and Supplement Facts Labels." *See* 85 Fed. Reg. 66217 (Oct. 19. 2020) (announcing availability of Final Guidance).  That Final Guidance expressed FDA's intention to exercise enforcement discretion and therefore exclude

Allulose from the "Total Sugars" and "Added Sugars" declarations.  *See* Exh. L (Final Guidance).

The FDA permitted use of a general factor of 0.4 calories per gram (kcal/g) for Allulose when

calculating "Calories," as opposed to 4 kcal/g for traditional sugars.  *See id*.

52.     In the Final Guidance, the FDA departed from its chemically-focused approach to

sugar definition.   The FDA stated:

> [W]e should consider not only the chemical structure of sugars, but also other
> evidence, including their association with dental caries and how they are
> metabolized in the body (e.g., caloric contribution and their effect on blood
> glucose and insulin levels), when determining whether a sugar should be
> included in the declaration of "Total Sugars" on the label. …
>
> The "Total Sugars" declaration provides consumers with information that they
> can use to evaluate the contribution of sugars in their diet to the risk of dental
> caries. We therefore believe that evidence related to the association between
> consumption of a sugar and dental caries is an important consideration when
> determining whether the amount of a particular sugar in a serving of a product
> should be excluded from the "Total Sugars" declaration on the label. …
>
> Including sugars that contribute much less than 4 kcal/g to the diet in the "Total
> Sugars" declaration would not accurately reflect the caloric contribution to the
> diet of sugars like allulose that contain much less than 4 kcal/g. Therefore, we
> consider the caloric contribution of a sugar to be an important consideration
> when determining if the sugar should be excluded from the amount of the "Total
> Sugars" declaration. …
>
> Some consumers expect that when they eat sugars, the result will be an increase
> in blood glucose and insulin levels. Therefore, we consider a sugar's effect on
> blood glucose and insulin levels to be important considerations when
> determining whether a sugar should be excluded from the "Total Sugars"
> declaration.

Exh. L at 6-8.  The FDA would later take a contradictory approach with Tagatose without any

reasoned explanation for its departure from its above rationale.  *See* Exh. M (the FDA's denial

letter for Bonumose's Tagatose citizen petition).

53.     The FDA rationalized treating treated Allulose differently than from traditional

sugars because, *inter alia*, "allulose is virtually unmetabolized in the human body," and based on

the evidence regarding lower caloric value and decreased dental caries. Exh. L at 8. Tagatose shares those same properties, but the FDA overlooked those facts when evaluating Bonumose's petition.

54.     On October 19, 2020, the same date the FDA published its Final Guidance on allulose, the FDA opened a public docket inviting information and comments on the nutrition labeling of sugars that are metabolized differently than traditional sugars. *See* 85 Fed. Reg. at 66335.

55.     On November 2, 2020, Bonumose submitted a comment on that RFI that, *inter alia*, encouraged FDA to declare ingredients such as Tagatose by name or as a member of a separate category like "Beneficial Sugars" in nutrition labels, which was consistent with Bonumose's requests in its Tagatose Citizen Petition. *See* Exh. N.

56.     The FDA has taken no action on the Request for Information (RFI), and the agency has not announced any plans to take regulatory action regarding Tagatose.

**E.  Bonumose's Citizen Petition to Exempt Tagatose from "Sugars" Disclosures**

57.     In April 2018, Bonumose submitted a petition that was similar to T&L's 2015 petition in that, like T&L with Allulose, Bonumose asked FDA to amend its regulations to exempt Tagatose from the "added sugars" disclosures on the Nutrition Facts Panel. *See* Exh. A. Bonumose's petition included more than eighty-seven (87) scientific publications and authorities supporting its position.

58.     Despite the clear similarities between Allulose and Tagatose, the FDA inexplicably failed to act on Bonumose's petition for more than four years.

59.     Bonumose's petition provided evidence that use of Tagatose over Allulose was more beneficial to consumer health and food manufacturing because, in part, Tagatose is better

tolerated during digestion, has a greater sweetening effect more closely resembling regular sugar (and thus requires less amounts to sweeten), is a better manufacturing component because it more closely performs like conventional sugar (e.g., absorbs less moisture in the food production conditions), and better reduces appetite.  More so than Allulose, Tagatose can enable food manufacturers to produce healthier sweetened foods that consumers will enjoy, but food manufacturers are discouraged from doing so because of the FDA's arbitrary and capricious decision forcing Tagatose to be counted under "added sugar" grams.

60.    The FDA's delay in acting on Bonumose's petition caused considerable economic injury to Bonumose in the form of lost business opportunities.  While Bonumose's petition was pending, Allulose-containing products acquired considerable market share – a fact of which FDA is aware.  Yet some food manufacturers are not willing to use Tagatose as a sweetener if the ensuing food label must declare Tagatose an "added sugar."  Those companies would prefer to use sweeteners such as Allulose or sugar alcohols, which have the blessing of the FDA, to avoid undesirable "sugar" disclosures.

**F.  The FDA's May 18, 2022 Denial Letter**

61.    Four years after Bonumose filed, the FDA denied the Tagatose Citizen Petition on May 18, 2022.  *See* Exh. M (hereinafter, "Denial Letter" or "Denial").  The FDA's denial conflicts with the Agency's decision to allow Allulose to be exempted from "sugar" disclosures in Nutrition Facts Panel labeling.

62.    Moreover, FDA's Denial failed to consider important facts, including the health benefits of Tagatose in comparison with conventional sugars.  The FDA failed to consider the fact that Tagatose has substantially fewer calories than conventional sugars.  It failed to consider the fact that Tagatose is substantially sweeter than alternatives such as Allulose.  FDA erroneously

suggested that Tagatose provides "empty calories," without considering the fact that Tagatose functions like dietary fiber in the body, has substantial health benefits for consumers, and has calories merely for the same reason dietary fiber has calories: because of the beneficial actions in the large intestine.  FDA failed to consider that the body metabolizes Tagatose differently than conventional sugars, and does not contribute to blood glucose increases like conventional sugars. The FDA also did not dispute that Tagatose functions as described in Bonumose's petition, or that it provides the health benefits described.  FDA therefore lacked any requisite and reasonable factual basis to deny Bonumose's petition, and acted arbitrarily and capriciously in favoring sweeteners such as Allulose over Tagatose. Notably, unlike Tagatose, Allulose is produced by high-fructose corn syrup producers from excess fructose.

63.    In the Denial Letter, FDA took positions directly contrary to those ~~taken~~it took in its evaluation of Allulose, including an unexplained and unreasoned departure from the agency's molecular definition of sugar (despite the FDA's focus on biophysical considerations like metabolism ~~when the agency earlier evaluated Allulose.~~).  *Compare* Exh. L *with* Exh. M.  That preferential discriminatory treatment for Allulose is arbitrary and capricious and reflects administrative bias or favoritism without rational justification.

64.    Bonumose supplied eighty-seven supporting scientific studies and references, along with others cited through Bonumose's petition.  In its Denial Letter, the FDA failed to raise any criticisms or objections to any of the scientific literature and supporting documents cited and provided by Bonumose in the citizen petition.  *See* Exh. A.

65.    The FDA did not dispute that Tagatose provides the health benefits identified in Bonumose's petition.  The FDA also did not dispute that Tagatose functions differently than traditional sugars in the body.  FDA ~~failed to~~did not dispute that Tagatose functions like a dietary

21

fiber in the body, and that it is not digestible like traditional sugars.

66.     FDA explained that the "basis" for its decision is the caloric contribution ~~from~~made by Tagatose.  *See* Exh. M at 4.  According to the FDA, it "has considered the presence of sugars as a component of dietary intake and whether it contributes to empty calories to the diet."  *Id*.  The FDA found it significant that Allulose provided no more than 0.4 kcal/g, but D-tagatose provided 1.5 kcal/g, compared to 4.0 kcal/g for sucrose and other traditional sugars.  *See id*. at 5.  The FDA alleged that "the total caloric contribution from sugars such as allulose and D-tagatose could differ significantly."  *Id*.  ~~As a result, on this~~On that sole basis, the FDA decided to treat Allulose and Tagatose differently ~~and would not amend its labeling regulations regarding the declaration of~~, refusing to exercise enforcement discretion to exempt Tagatose as it had Allulose.  *See id.*

67.     FDA erred, demonstrably and objectively, when it described Tagatose as "empty calories."  Its conclusion that Tagatose provides "empty calories" is arbitrary and capricious~~: in conflict~~.  It conflicts with the undisputed scientific and administrative record, and ~~in conflict~~it conflicts with the definition of "empty calories" used in the very same Scientific Report of the 2015 Dietary Guidelines Advisory Committee relied upon by FDA in its Denial Letter (2015 DGAC Report).[13]  Data supplied in both FDA-2018-P-0874 and FDA-2018-P-5545 reveal that Tagatose confers many physiological benefits, belying the "empty calorie" descriptor.  Those include inhibition of the growth of harmful microorganisms and promotion of the growth of beneficial microorganisms that produce short-chain fatty acids—the same ~~things~~as dietary ~~fiber does~~fibers do.  Both the organisms and the short-chain fatty acids ~~produced~~ are associated with

---

[13] In the 571-page 2015 DGAC Report, Tagatose is not mentioned even once. The Report said: "Names for added sugars include: Brown sugar, corn sweetener, corn syrup, dextrose, fructose, fruit juice concentrates, glucose, high-fructose corn syrup, honey, invert sugar, lactose, maltose, malt sugar, molasses, raw sugar, turbinado sugar, trehalose, and sucrose." Furthermore, Tagatose is not associated with any of the negative health outcomes associated with sugar consumption as outlined in the 2015 DGAC Report. In fact, Tagatose has been shown to have a positive impact on those areas of health.

~~many~~ beneficial metabolic outcomes.  Recent data confirm ~~these~~those substances confer as much or greater nutritional benefit than a traditionally defined nutrient such as potassium.  As described in FDA-2018-P-5545 (Bonumose's November 2018 "fiber" Citizen Petition), Tagatose's beneficial effects include those that meet the criteria ~~of~~for demonstrating "beneficial physiological effect" as a dietary fiber (post-prandial glucose and insulin levels, glycemic response, fasting glucose and insulin levels, total and LDL cholesterol levels, bowel function and energy intake).  Far from being "empty calories," Tagatose is a nutrient—like dietary fiber (dietary fiber has 2.0 kcal/gram—which is 33% more than Tagatose). In FDA's response to Bonumose's fiber Citizen Petition, FDA accepted (or at least failed to dispute) the beneficial physiological effects of Tagatose described in Bonumose's petition.  Despite previously announcing "we seek to include in our definition non-digestible carbohydrates with physiological effects that are beneficial to human health, <u>regardless of size</u>" (79 Federal Register 11909, emphasis added), FDA chose to deny Bonumose's fiber petition not because it disagreed with Tagatose's fiber-like functionality and benefits but solely because Tagatose is a monosaccharide (degree of polymerization of 1) ~~instead~~rather than possessed of a molecule with a degree of polymerization of at least 3. 21 C.F.R. § 101.9(c)(6)(i).  In other words, FDA made a decision based on *the size* of Tagatose, not based on its beneficial physiological effects.

68.    FDA's denial of Bonumose's "sugar" exemption Citizen Petition was arbitrary, capricious, and an abuse of discretion because, unlike the standard of review it set with Allulose, FDA ignored Tagatose's dental health and blood glucose/insulin benefits and based its decision entirely on calories:  "While we have recognized through our health claim for dietary noncariogenic carbohydrate sweeteners and dental caries that D-tagatose may reduce the risk of dental caries (21 CFR 101.80) . . . , the caloric contribution from D-tagatose was not relevant to

that determination, but is the basis for our decision here."   Exh. M at 4.

69.     FDA's denial was arbitrary, capricious, and an abuse of discretion because, unlike the standard of review it set with Allulose, FDA used Allulose – instead of sucrose – as the reference ingredient for caloric value:  "Your petition states that the caloric contribution of D-tagatose is 1.5 kcal/g (petition at page 10), which is significantly higher than allulose."   *Id*. Tagatose has 63% less calories than sucrose (1.5 kcal/gram versus 4.0 kcal/gram), and it was arbitrary for FDA to decide 63% less is not "much less" or to move the goal posts by establishing a different reference level for Tagatose than it did for Allulose.

70.     FDA's denial was arbitrary, capricious, and an abuse of discretion because FDA mistakenly said Tagatose's calories are "empty ~~calories."   This~~." That is scientifically, nutritionally, and legally ~~wrong~~erroneous.  The standard ~~of~~for "empty calories" is not part of U.S. statutes or regulations.  The term "empty calories" does not have a legal definition.  It is borrowed from the Scientific Report of the 2015 Dietary Guidelines Advisory Committee ("2015 DGAC Report"), in which "~~Empty~~empty calories" was defined as, "~~The~~"[t]he calories from components of a food or beverage that contribute few or no nutrients."  However, the 2015 DGAC Report is inconsistent about what "nutrients" means, even twice saying ~~the~~ "sodium and saturated fat" are nutrients, albeit nutrients that are "overconsumed by the U.S."  Furthermore, (a) Tagatose is a nutrient in the same way as soluble fiber is a nutrient and therefore does not contribute "empty calories," (b) the new 2020 DGAC Report abandons the concept of "empty calories," and (c) the DGAC itself has been called into question because of ~~the~~ "significant and widespread" conflicts of interest according to the March 2022 report entitled, "Conflicts of interest for members of the

U.S. 2020 Dietary Guidelines Advisory Committee."[14]

71.     Describing the low nutritional value of empty calories to the diet and the rationale for considering added sugars as "empty" calories, FDA stated that, ~~"Sugars~~"[s]ugars, added in excess, do not provide any health benefits." *See* 81 FR 33742 at 33814 (emphasis added). However, ~~Bonumose's~~Bonumose well-documented the health benefits attributable to Tagatose~~, the~~.  The FDA ignored and failed to evaluate those benefits, and the FDA raised no dispute or objections as to the data Bonumose supplied supporting those benefits.

72.     The FDA's position also conflicts with statements by authoritative bodies such as the EFSA and the general body of scientific evidence, all of which support the conclusion that use of Tagatose in food products does not lead to consumption of "empty calories" or result in adverse health consequences.  As described in FDA-2018-P-0874, none of the published reports to date concerning the effects of added sugars and sugar-sweetened beverages on diet quality and health outcomes capture any adverse data on Tagatose.  *See Amended Citizen Petition from Bonumose LLC,   FDA-2018-P-0874*~~,  https://beta.regulations.gov/document/FDA-~~  (2018~~-P-0874-0023 (2018).  ).~~[15]

73.     Indeed, the FDA conceded that the Citizen Petition "provides data to support the claim that Tagatose does not increase risk for chronic disease and is associated with positive health outcomes."  *See* Exh. M at 2.

74.     As it has consistently, the FDA acknowledged that Tagatose is metabolized

---

[14] Melissa Mialon *et al.*, *Conflicts of interest for members of the U.S. 2020 Dietary Guidelines Advisory Committee,   available   at*   ~~https://pubmed.ncbi.nlm.nih.gov/35311630/   (last   accessed   Nov.   8, 2022~~https://pubmed.ncbi.nlm.nih.gov/35311630/ (last accessed June 2, 2023) ("Our analysis found that 95% of the committee members had COI [conflicts of interest] with the food, and/or pharmaceutical industries and that particular actors … had connections with multiple members. … Trustworthy dietary guidelines result from a transparent, objective, and science-based, process. Our analysis has shown that the significant and widespread COI on the committee prevent the DGA from achieving the recommended standard for transparency without mechanisms in place to make this information publicly available.").

[15] *At* https://www.regulations.gov/document/FDA-2018-P-0874-0023.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

differently than traditional sugars that are associated with increased risk of dental caries, have 4 calories per gram, and cause an increase in blood glucose and insulin levels after consumption. *See* Exh. M at 3.  The FDA also recognized that Tagatose does not have the same effects in the body as traditional sugars.  *See id.*

75.    In explaining the rationale for its decision not to exclude Tagatose from the added sugars declaration—as it did for Allulose—the FDA did not address the fact that Allulose is less sweet than Tagatose and, therefore, more Allulose is needed to achieve the desired sweetness level compared to Tagatose in a finished food, which reduces the difference in calories.

76.    The FDA remarked that, although it was denying Bonumose's requests in its Tagatose petition, it would not object to the use of 1.5 kcal/g for Tagatose while determining "Calories" on Nutrition and Supplement Facts labels.  *See* Exh. M at 1.  But FDA then failed to address the benefits of Tagatose providing only 1.5 kcal/g compared to traditional sugars, such as sucrose, that impart 4 kcal/g.  To compare, in the Final Guidance on Allulose, FDA stated, "[W]e expect the caloric contribution of allulose will be insignificant in most cases and will substantially reduce the amount of total calories and calories from added sugars in products where it replaced those added sugars."  Exh. L at 8.  The FDA did not explain why it compared Tagatose to Allulose ~~instead of~~rather than to traditional sugars when it evaluated caloric contributions, which is arbitrary (and indicative of an anti-competitive intent) given that Tagatose would be replacing traditional sugars in foods and thereby significantly lowering caloric load.

77.    The FDA also refused to amend 21 C.F.R. § 101.9(c) to allow for voluntary declaration of Tagatose or "beneficial sugars" in a manner similar to that permitted for sugar alcohols.  *See* Exh. M at 6.  According to the agency, it denied Bonumose's request because there are sugars other than Tagatose that are metabolized differently or have different effects in the body

than traditional sugars, and declaration of those individual sugars could "clutter" the label. *See id.*

78.     Bonumose's Citizen Petition defined "beneficial sugars" as monosaccharides or disaccharides with beneficial physiological effects.   By denying Bonumose the ability to voluntarily declare beneficial sugars, the FDA therefore precludes Bonumose from conveying truthful information to consumers regarding the beneficial characteristics of Tagatose in a manner that would disabuse consumers of the negative implications of the generic "added sugars" ~~disclosures~~disclosure, thus violating the First Amendment.

79.     FDA's Denial Letter also conflicts with other labeling requirements in 21 C.F.R. § 101.9. FDA's regulation in 21 C.F.R. § 101.9 (c)(1)(i)(C) requires that "total carbohydrate" caloric content be calculated by excluding "the amount of non-digestible carbohydrates and sugar alcohols." *See id.* (providing calorie calculations "[u]sing the general factors of 4, 4, and 9 calories per gram for protein, total carbohydrate (less the amount of non-digestible carbohydrates and sugar alcohols), and total fat, respectively…").   Tagatose is a non-digestible carbohydrate (i.e., dietary fiber).   The FDA has acknowledged that Tagatose shares similarities in this regard to sugar alcohols.  *See* Ltr. from FDA to Bonumose Denying Bonumose's Dietary Fiber Citizen Petition (Jan. 11, 2021) (Exh. O at 5) ("Furthermore, these materials physiologically act as classic osmotically active agents in the gut, much in the same way that sugar alcohols do[.]") (quoting Panel on the Definition of Dietary Fiber. *Dietary Reference Intakes: Proposed Definition of Dietary Fiber*. (2001)).   Although the FDA does not dispute that Tagatose has low digestibility, the agency nonetheless ignored that factor when inaccurately deeming Tagatose "empty calories" in the Denial Letter.   The FDA therefore arbitrarily and capriciously ignored its own regulatory standards when denying Bonumose the requested exemption for Tagatose from the "sugars" labeling ~~requirements~~requirement.

27

80.     Given FDA's disparate treatment of Allulose and Tagatose, Bonumose is at a market disadvantage compared to companies that produce and market Allulose, which ~~typically are~~include the large high-fructose corn syrup producers.

81.     Allulose and Tagatose are similar substances.  Both are monosaccharides (simple sugars) that do not behave like sucrose, glucose, fructose, and lactose (i.e., traditional sugars) in the body.  Compared to traditional sugars, Allulose and Tagatose both have many benefits, including:  decreased risk for tooth decay; decreased post-prandial glucose and insulin levels; decreased fasting glucose and insulin levels; decreased total and LDL cholesterol levels; improved bowel function; and decreased energy intake.

82.     Allulose and Tagatose have some slight differences.  For example, Tagatose acts like fiber in the gut whereas Allulose does not. Allulose has a slightly lower glycemic index that Tagatose, 1 compared to 3 on a scale of 1 to 100.  Allulose also has a lower caloric value than Tagatose, 0.4 compared to 1.5 kcal/g.  Allulose, however, is not as sweet as Tagatose, meaning greater amounts of Allulose are required to achieve sweetness comparable to tagatose.  Specifically, Allulose is 70% as sweet as sucrose, whereas Tagatose is 92% as sweet as sucrose.  Thus, less Tagatose is required to achieve desired sweetness in food.  The FDA failed to reference or evaluate that important factor in its Denial Letter.  The agency has exempted only Allulose from the total sugars and added sugar declarations required by 21 C.F.R. § 101.9(c)(6).

83.     Yet because of the FDA's decision to exempt Allulose—but not Tagatose—from sugar disclosures under 21 C.F.R. § 101.9(c)(6), the market for Allulose is growing.   On information and belief, in the first two years after the FDA permitted the exception for Allulose, 161 Allulose-containing products have launched.

84.     Per a report from Global Market Insights, the Allulose market size exceeded $29

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

million in 2020 and is estimated to have a 19.2% compound annual growth rate from 2021 to 2027. That growth rate can be directly attributed to the FDA's decision to grant Allulose an exemption from sugars disclosure in Nutrition Facts labeling while concurrently denying market competitors (such as Tagatose) that same exemption.

85.     Allulose manufacturers (such as Tate & Lyle), have directly attributed Allulose's success to FDA's decision to exclude Allulose from the total sugars and "added sugars" declarations: "The first two things consumers look for on the Nutrition Facts panel now are calories and sugar."  *See* Elaine Watson, "Tate & Lyle: 'The first two things consumers look for on the Nutrition Facts panel now are calories and sugar,'" FoodNavigator-USA (May 13, 2019). Tate & Lyle has also stated that impacting calories and sugar can "make a massive difference in terms of how consumers will see a product, and allulose can now deliver against both."

86.     The FDA's denial of Bonumose's citizen petition has created a de facto Allulose-exempt-from-"sugar" monopoly.  And FDA's refusal to extend the same exemption to Tagatose has caused irreparable harm to Bonumose in the market.

87.     The FDA was aware that its actions were creating or created a beneficial market for allulose-containing products.  For example, in documents received from the agency in response to a Freedom of Information Act ("FOIA") request, the FDA acknowledged statements by Ed Rogers, Bonumose's Chief Executive Officer, related to large manufacturers' reluctance to add Tagatose to their products unless FDA exempts it from the "Added Sugars" and "Total Sugars" declarations.  Further, in July of 2020, an FDA employee, Blakeley Fitzpatrick, stated, "Since we issued the [draft] guidance on allulose, I have seen it popping up on store shelves everywhere sold under the name of different brands. I pulled up more than 10 different products marketed as allulose sold by different companies on Amazon."

**G.  FDA's Failure to Exempt Tagatose Creates Consumer Confusion**

88.    Absent Bonumose's requested labeling exemption, the FDA's regulation in 21 C.F.R. § 101.9(c)(6)(ii)-(iii) creates a controversial and materially misleading representation to consumers regarding the sugar content in Tagatose-containing foods.  FDA's "added sugars" disclosure compels food labelers to represent to consumers that Tagatose is the functional equivalent of conventional sugar.  That representation would be false because, as further described hereinabove, Tagatose does not function as a sugar in the body.  Thus, the "added sugars" disclosure, as applied to Tagatose, would be materially misleading and causes consumers to be misinformed about the nature of Tagatose-containing products.  These claims are material to consumer purchasing decisions, particularly for consumers looking to avoid products that are sweetened with conventional sugars, and will lead to poorer health outcomes for consumers. In some situations (e.g., hyperglycemics who take an insulin shot in anticipation of a blood glucose spike), the misinformation could be dangerous because Tagatose does not spike blood glucose.

89.    As they exist now, nutrition labeling regulations do not provide sufficient information for United States consumers to understand the nature of Tagatose disclosures or cure the misleadingness arising from FDA's mandatory "Added Sugars" classification of Tagatose. Under 21 C.F.R. § 101.9(c)(6)(ii)-(iii), FDA includes or excludes substances from the definition of "Total Sugars" and "Added Sugars" solely based on whether those substances are mono- or disaccharides.  Thus, the "Total Sugars" and "Added Sugars" declarations on food labels merely inform consumers about the presence of one or more naturally occurring and/or added substances that are chemically sugars.  The declarations do not inform consumers about the different nature of rare sugars and the divergent physiological effects, if any, of the sugars in the food.  The absence of that essential differentiation in the "added sugars" disclosures convey to consumers, falsely,

that all sugars (except the FDA's favored monosaccharide, Allulose) are the same and are harmful because consumers associate sugar disclosures with sucrose, a traditional sugar that may have harmful effects. *See id*. (acknowledging that "sugars that many consumers are most familiar with ('traditional sugars'), such as sucrose, are associated with an increased risk of dental caries, have 4 calories per gram, and cause an increase in blood glucose and insulin levels after consumption").

90.     Indeed, the FDA has defined "sugar" elsewhere in its regulations as just "sucrose":

> For purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of § 184.1854 of this chapter.

*See* 21 C.F.R. § 101.4(b)(20) (defining sugar for ingredient labeling).

91.     FDA designates specific analytical methods to determine the presence of each nutrient that requires labeling on the Nutrition Facts Panel.  In 21 C.F.R. § 101.9(g)(2), FDA states that nutrient disclosures on Nutrition Facts labeling shall be calculated using appropriate AOAC standards:  "Unless a particular method of analysis is specified …, composites shall be analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures."

92.     AOAC method 977.20 is the most appropriate method to determine the presence of sugars in products for which Tagatose would commonly be introduced as a sugar alternative. AOAC 977.20 is a method for determination of sugars in honey and it also has been adopted in the peer-reviewed literature as an appropriate method to identify levels of sugar in solution. *Compare* Ventura, E.E., Davis, J.N. and Goran, M.I. (2011), Sugar Content of Popular Sweetened Beverages Based on Objective Laboratory Analysis: Focus on Fructose Content. Obesity, 19: 868-874, *at* https://doi.org/10.1038/oby.2010.255, *with* Hobbs, L and Krueger, D, "Response to 'Sugar

31

Content of Popular Sweetened Beverages Based on Objective Laboratory Analysis," *at* https://onlinelibrary.wiley.com/doi/full/10.1038/oby.2011.4 ("The method used for this analysis was AOAC 977.20). AOAC method 977.20 is an "appropriate method" for determining the sugar content of food products under 21 C.F.R. § 101.9(g)(2).

93. Tagatose has been analyzed under AOAC method 977.20. Those lab assay results reveal that Tagatose contains < 0.5% total sugars. That data supports Bonumose's request in its petition to exempt Tagatose from sugar disclosures because, in fact, Tagatose is not a source of detectable "sugars" using FDA recommended analytical methods. The FDA requires healthy Tagatose to be counted as "sugar" grams, even though its prescribed analytical methods do not detect Tagatose as sugar.

94. EFSA, in its Tolerable Upper Intake Level for Dietary Sugars Scientific Opinion, stated, "Alongside polyols, other substances used as sugar replacers and other mono- or disaccharides present in the diet in marginal amounts are not included in the term 'sugars' for the purpose of this assessment (e.g., isomaltulose, D-tagatose)." *See* EFSA Panel on Nutrition Novel Foods and Food Allergens. *Tolerable upper intake level for dietary sugars*. (December 2021).

95. The "added sugars" disclosure conveys false, misleading, and scientifically controversial statements regarding products that contain Tagatose by drawing a direct correlation between Tagatose-containing products and those containing traditional sugars, such as sucrose and high-fructose corn syrup, that are associated with poor health outcomes. The FDA's selective exemption of Allulose from those "added sugars" disclosures compounds the FDA-caused consumer confusion because the agency has already acknowledged that the addition of rare sugars such as Allulose and Tagatose do not result in the same harmful effects as conventional sugars. *See, e.g.*, 81 Fed. Reg. 33742, 33795-96 (May 27, 2016) (acknowledging Allulose is different than

32

traditional sugars); id. at 33803 (explaining FDA's rationale for requiring the "added sugars" declaration was, in part, to help consumer construct a dietary pattern that is low in added sugars because of the harmful effects of added sugars).  Moreover, by exempting Allulose but not Tagatose, the FDA bolsters the false message that Tagatose is indistinguishable from conventional sugars and lacks the same healthy attributes as Allulose.

96.     This FDA-mandated misrepresentation has and continues to cause significant injury to consumers because the FDA is endorsing nutrition labeling that denies consumers at the point of sale on labels and in labeling of information sufficient to distinguish products that are chemically distinct from conventional sugars and have no serious adverse effects on the body as do conventional sugars.

97.     Because Tagatose functions as a soluble fiber in the body, the FDA's failure to properly identify Tagatose on labeling may also result in unhelpful overconsumption of fiber unless Tagatose can be specifically identified on product labeling.

98.     Bonumose raised the concern with misleading labeling in its citizen petition.  The FDA failed to address concerns that consumers are being misled or confused about the effects of Tagatose as a result of the current labeling scheme.  The FDA avoided that issue despite acknowledging that consumers had negative views of added sugars in the preamble to the Final Rule.  *See, e.g.*, 81 Fed. Reg. at 33761 ("[A] food with a high amount of added sugars may be understandably viewed as 'unhealthful' because, if consumed, it may result in overconsumption of added sugars for the day.").

99.     Consumers draw a negative connotation from "added sugars" disclosures, and data shows that such disclosures result in consumer confusion concerning sugar alternatives such as Allulose and Tagatose.  Several studies found that while both health professionals and consumers

had positive feelings regarding the availability and use of Allulose, there was concern about confusion caused on the labeling under Section 101.9(c)(6) because those alternative sweeteners were not distinguished from conventional sugar. This was confirmed in a survey of diabetics and non-diabetics showing that, when Allulose was classified as an added sugar, consumers were unsure of the caloric density or glycemic control properties of the food. *See, e.g.,* FDA-2015-P-1201-0005 (CHPR Qualitative Consumer Group Research). There was more consumer interest in the product when it was clear that it contained the beneficial monosaccharide Allulose, rather than sucrose. *See* Exh. A at 25. Those study findings further demonstrate that consumers have a negative impression of products containing elevated levels of conventional sugars, and that such consumers are misled by generic "added sugars" disclosures that fail to differentiate between conventional sugars and healthier sugar substitutes. Consumers are misled into thinking that the "added sugars" disclosure refers to conventional sugars that may carry negative health outcomes.

100.    Finally, as applied to Tagatose-containing products, the FDA's mandatory ~~sugar disclosures lead~~added sugars disclosure leads to factually false information on food labeling. As part of the FDA's 2016 labeling changes, FDA required the reporting of a "% DV" or "percent daily value" of added sugars in food. *See* 21 C.F.R. § 101.9(c)(9). That mandatory declaration requires reporting of the percent daily values of added sugars in a serving of food relative to the Dietary Reference Value (DRV) of 10 percent of calories per day. *See, e.g., id.*; 81 Fed. Reg. at 33842. The declaration is the result of FDA's determination that high added sugar intake may be associated with increased risk for chronic disease. *See, e.g.,* 81 Fed. Reg. at 33842 ("Our rationale for requiring the mandatory declaration of added sugars relates to consuming a healthy dietary pattern that meets nutrient needs within calorie limits and is associated with a decreased risk of chronic disease."). For purposes of maintaining an accurate, informative label that will aid

consumers in making sound dietary choices, the FDA must exempt from the "added sugars" disclosures monosaccharides such as Tagatose that do not have physiological properties that increase risk for chronic disease.

101.    In the FDA's own Factsheet[16] for "Total and Added Sugars," none of the FDA's negative statements about sugar are true for Tagatose.

102.    The Sugars Factsheet says: "Sugars are the smallest and simplest type of carbohydrate. They are easily digested and absorbed by the body." For Tagatose, this statement is false. Tagatose is a simple carbohydrate, but Tagatose is not easily digested and absorbed by the body. Tagatose is a nondigestible carbohydrate. Only 20%-25% is absorbed in the small intestine, with the remainder passing into the large intestine where is it is fermented by the microbiota, like soluble fiber.

103.    The Sugars Factsheet says: "Each gram of sugar provides 4 calories. The human body breaks down sugars and other carbohydrates into glucose." For Tagatose, this statement is false. Tagatose has only 1.5 calories per gram. Tagatose cannot and is not broken down into glucose in the human body.

104.    The Sugars Factsheet says: "There is evidence that diets characterized, in part, by lower consumption of sugar-sweetened foods and beverages relative to less healthy dietary patterns are associated with a reduced risk of developing cardiovascular disease." For Tagatose, this statement is false. In contrast to common sugars, Tagatose consumption raises HDL cholesterol (good cholesterol) levels, thereby reducing the risk of cardiovascular disease.

105.    The Sugars Factsheet says: "Diets higher in all sugars can also increase the risk of

---

[16] *Available at* ~~https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/~~ https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/assets/InteractiveNFL_Total&AddedSugars_O ctober2021.pdf (last accessed ~~Nov. 8, 2022~~June 2, 2023).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

developing cavities." For Tagatose, this statement is false. Tagatose does not cause dental caries and is identified as non-cariogenic in 21 CFR §101.80. Furthermore, Tagatose breaks up dental biofilm, and as such has a positive effect on dental health, making it even suitable as an ingredient in toothpaste and mouthwash.

106.    The Sugars Factsheet says: "The Dietary Guidelines for Americans recommends consuming less than 10% of calories per day from added sugars. The guidelines also note that many foods and beverages that contain added sugars also tend to be high in calories and provide few or no important nutrients or dietary fiber." For Tagatose, this statement is false or misleading. The Dietary Guidelines do not mention Tagatose at all. Furthermore, Tagatose acts like soluble fiber in the gastrointestinal tract and therefore could be classified as a nutrient that should be consumed. Calories from Tagatose are not "empty calories."

107.    Ironically, Tagatose fits a description of "soluble fiber" in the FDA Dietary Fiber Factsheet:[17] "It is broken down by bacteria in the large intestine and provides some calories."

108.    Failure to exempt Tagatose results in inconsistent declarations on product labels, particularly the "% DV" disclosures that will appear inconsistent to consumers when comparing traditionally sweetened products to those containing tagatose.  To include Tagatose as an added sugar would not only convey to consumers that it has the same physiological effects as sugars such as sucrose and high-fructose corn syrup ("HFCS"), but also would lead to an inaccurate display of the % DV for added sugars.  The FDA's Dietary Guidelines set the DV for added sugars at 10% of recommended caloric intake (*see, e.g.,* 81 Fed. Reg. at 33842), which on the label is 2000 kcal/day. Thus, the DV for added sugars is 50 g (200 calories) for adults and children aged 4 years

[17] *Available at* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/Interactive NFL_DietaryFiber_October2021.pdf (last accessed Nov. 8, 2022). *Available at* https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/assets/InteractiveNFL_DietaryFiber_October2021.pdf (last accessed June 2, 2023).

and older.  *See* 21 C.F.R. § 101.9(c)(9).  But since the caloric values of Tagatose and other rare hexoses such as Allulose are less than that of sucrose and HFCS, foods containing these sugar substitutes would have an inflated added sugar % DV than is factually correct.  Because of that inaccuracy, food labels for products containing Tagatose are mandated by FDA to deceive the consumer into thinking that a particular product is associated with health risks, rather than health benefits.  The labeling is also false and misleading under the Food, Drug, and Cometic Act, 21 U.S.C. 343(a).  Those outcomes result from the FDA's failure to consider rare monosaccharides when developing new "sugars" disclosures in 2016, but also from the FDA's refusal to grant Bonumose's requested relief.

**H.  FDA's Denial of the Citizen Petition ~~is~~Is a Symptom of Larger Bureaucratic Concerns**

109.    FDA's arbitrary and capricious decision is symptomatic of an organization that has not acted in the best interests of the American public.  Four former senior FDA officials recently commented that the agency's decisions have imperiled "[t]he public's health and FDA's credibility and standing on food safety[.]"[18]  In response, in January 2023, FDA Commissioner Califf announced a wholesale reorganization of the FDA's human foods program.[19]  Much criticism about FDA infighting, turf battles, and a dysfunctional bureaucracy at cross-purposes with consumer health has focused on CFSAN (the FDA division responsible for the arbitrary and capricious Denial Letter) and its Director Susan Mayne.

---

[18] *See* Dr. David Acheson *et al*., *Overhauling the Structure and Governance of FDA's Food Program, A Submission to the Reagan-Udall Independent Expert Panel* (Oct. 11, 2022), *available at* ~~https://foodfix.co/wp-content/uploads/Case-for-New-Governance-Model-Oct-11-2022.docx.pdf~~https://foodfix.co/wp-content/uploads/Case-for-New-Governance-Model-Oct-11-2022.docx.pdf (last accessed ~~Nov. 8, 2022~~June 2, 2023); *Why Most Everyone Thinks FDA Needs a Real Shakeup*, Food Fix (Nov. 4, 2022), *available at* ~~https://foodfix.co/why-most-everyone-thinks-fda-needs-a-real-shakeup/~~https://foodfix.co/why-most-everyone-thinks-fda-needs-a-real-shakeup/ (last accessed ~~Nov. 8, 2022~~June 2, 2023).

[19] *See* https://www.fda.gov/news-events/press-announcements/fda-proposes-redesign-human-foods-program-enhance-coordinated-prevention-and-response-activities.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

110.    The FDA has taken internally inconsistent positions regarding the definition of a "nutrient" for purposes of the FDA's position on "empty calories."  In a November 3, 2022, meeting with Bonumose, neither Claudine Kavanaugh (Director of CFSAN's Office of Nutrition Facts Labeling), Blakeley Fitzpatrick (FDA Interdisciplinary Nutrition Scientists), nor two FDA lawyers could provide an explanation of what makes soluble fiber a "nutrient" other than its beneficial effects on the gut and association with reduced incidence of disease, two attributes that Tagatose shares with soluble fiber.  Thus, under the FDA's own understanding of a "nutrient," Tagatose would qualify, meaning that calories obtained from Tagatose are not "empty."

111.    During that same meeting, Laura Kurpad, FDA Associate Chief Counsel, brazenly and arbitrarily attempted to change the FDA's previously stated standard of review for rare sugars, and instead of using the measurement of "much less calories than sucrose" as it had with Allulose, instead declared Tagatose did not meet the heretofore unannounced new standard of providing "negligible calories."  These shifting burdens and standards of review at the administrative level reflect arbitrary and capricious – even hostile – decision-making by an agency taking inconsistent positions from one product to the next.

~~112.~~    Reflecting bias against Bonumose and/or toward public health in general, on May 28, 2021, upon hearing that the FDA would deny Bonumose's Citizen Petition seeking to have Tagatose accurately labeled as "fiber" on the Nutrition Facts Panel (FDA-2018-P-5545), the FDA's Fabiana Moura wrote to FDA staffers Blakeley Fitzpatrick, Deirdre Jurand, and Vincent DeJesus, that this was "The best news for this Memorial Day Weekend!!!!"

## V.    <u>CLAIMS FOR RELIEF</u>

## COUNT I:

## UNCONSTITUTIONAL COMPULSION OF MISLEADING AND CONTROVERSIAL SPEECH

### (Violation of First Amendment, U.S. Const. amend. I)

~~113.~~112.      Plaintiff incorporates by reference all allegations contained in paragraph 1 through 112, *supra*.

~~114.~~113.      The FDA compels speech on food labeling in the form of Nutrition Facts Panels.  As applied to Bonumose and regarding Tagatose-containing products, the FDA's required "added sugars" ~~disclosures are~~disclosure is false and/or misleading.  ~~Those labels convey~~The label conveys the misleading impression to consumers that Tagatose-containing products contain elevated levels of conventional sugars and that such Tagatose-containing products may be harmful to consumer health.

114.    Bonumose is a food ingredient manufacturer that specializes in the production of beneficial monosaccharides such as Tagatose.  Bonumose also plans to manufacture and sell finished food products directly at retail.

115.    As a food ingredient supplier, Bonumose is required to convey information about its product to food and beverage customers in the United States.  Those customers require Bonumose to disclose whether Tagatose must be counted in Nutrition Facts labeling as "added sugars."  Because FDA requires that Tagatose be listed as an "added sugar" in Nutrition Facts Labeling, Bonumose must disclose that misleading fact to customers.  To fulfill its obligations to customers, Bonumose prepared a "Nutritional Statement" regarding Tagatose describing the nutritional breakdown of Tagatose per 100 grams.  *See* Exh. P.  Bonumose provides that information specifically to aid customers in disclosing "Nutritional Facts" information on retail packages those customers sell.

116.    Multiple companies have informed Bonumose that they would purchase Tagatose but for the FDA requirement to list Tagatose as an "added sugar."  Accordingly, the FDA's "added sugars" regulation, as applied to Tagatose, has caused Bonumose to lose business.

117.    Bonumose, intends to sell Tagatose products under its own brand directly to end consumers, grocery stores, and restaurants.  Those plans include Tagatose to be used as a sugar alternative at home, as well as production and sale of its own branded food and beverage products sweetened with Tagatose instead of conventional sweeteners such as sucrose, corn syrup, high fructose corn syrup, polyols, or other sugar alternatives.  Bonumose has several product concepts in development.

118.    Bonumose planned to begin production in 2023, but was unable to implement those projects because FDA's "added sugars" regulations presently require Bonumose's product labels to count the Tagatose content as 100% "added sugar" grams.  That misleading compulsory speech on labeling implies that Tagatose is equivalent to conventional sugars such as sucrose.  Prospective consumers are unwilling to purchase such products, in some instances because those customers cannot reconcile the contradiction between the beneficial effects of Tagatose, on the one hand, and the FDA's negative association with "added sugars" on the other.  The nutrition label would be confusing partly because tagatose has 62% lower calories than conventional sugar.  Bonumose is unable to remedy that confusion through a disclaimer on consumer-branded packaging prototypes.

~~115.~~119.    When the government requires businesses to speak a message that is not "purely factual and uncontroversial" on product labels, that mandate is subject to strict scrutiny under the First Amendment or, at the very least, intermediate scrutiny under the *Central Hudson* standard.  *See Entm't Software Ass'n v. Blogojevich*, 469 F.3d 641, 651-52 (7th Cir. 2006) (holding that disclosures which are not "purely factual and uncontroversial" are subject to strict scrutiny);

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022) (explaining that the *Zauderer* exception for compelled speech only applies to speech that is "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome"). The government may not compel the transmission of misleading speech without violating the First Amendment. *See Cal. Chamber of Com.*, 29 F.4th at 473, 479. "While the First Amendment allows states and the federal government to bar others from disseminating false, deceptive, or misleading commercial speech, … the First Amendment also bars the government from compelling others to disseminate false, deceptive, or misleading commercial disclosures." *Id.* at 479 n.12.

120.    ~~Here~~By requiring Bonumose to identify Tagatose as an "added sugar," when it is not a conventional sugar and does not contain the same caloric count as conventional sugar, FDA is compelling Bonumose to engage in speech that is not purely factual and is instead controversial. The compelled disclosure is not purely factual because Tagatose is not a "sugar" as commonly understood by consumers, which consumers understand to mean a sugar that causes dental cavities and is unfit for diabetics or others trying to maintain metabolic health.[20] The compelled disclosure is also not purely factual and uncontroversial because, by forcing Bonumose to disclose Tagatose as an "added sugar," FDA is requiring Bonumose to misleadingly suggest to consumers and customers that consuming Tagatose causes the same health concerns and health risks associated with conventional sugar. *See CTIA – The Wireless Ass'n v. City & Cnty. of San. Fran.*, 494 F. App'x 752 (9th Cir. 2012) (holding that the lenient *Zauderer* standard does not apply to compelled speech that incorrectly implies a product is dangerous because such compelled speech is not purely factual).

~~116.~~121.    Moreover, the FDA cannot meet its constitutional burden to show that the

---

[20] It is not wholly or essentially sucrose and is not obtained from sugarcane or sugar beet. *See* https://www.merriam-webster.com/dictionary/sugar (last visited May 25, 2023).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

compulsory "sugar" disclosures, as applied to Tagatose, convey truthful and ~~not~~ non-misleading information to consumers.  Indeed, as applied to Tagatose, the compelled speech is false and misleading.  Regardless of the standard of review applied, misleading speech is controversial.  The constitution protects Bonumose against compelled speech that is false and injurious to consumers. *See, e.g., All-Options, Inc. v. Att'y Gen. of Indiana*, 546 F. Supp. 3d 754, 768 (S.D. Ind. 2021) (holding that the First Amendment protects "against untrue or misleading compelled speech").

122.    FDA regulations require Bonumose to inform consumers that Tagatose is an "added sugar" without adjacent text informing consumers that Tagatose, unlike conventional sugars, does not function as a sugar in the body, does not contribute to spikes in blood glucose levels, contains far fewer calories per gram, and does not produce the same negative health consequences as common sugars.  Meanwhile, FDA concurrently informs consumers that "added sugars" contribute to negative health outcomes, and FDA designed its "added sugars" disclosures to dissuade consumers from consuming products containing same.  As applied to Tagatose-containing products, FDA's "added sugars" disclosure is an implied claim that such products are substantially less healthy than related products, which is a factually false proposition.  Moreover, because FDA has exempted Allulose-containing products from those same "sugars" declarations, those sugars disclosures now also convey the factually false premise that Tagatose is less healthy than Allulose.

123.    By requiring Bonumose to disclose Tagatose as an "added sugar," FDA's added sugar regulations are overinclusive as applied to Tagatose because FDA is requiring Bonumose to disclose that Tagatose, which is not sugar as that term is commonly understood, and which is healthier than conventional sugar, is an "added sugar."

~~117.~~124.    The FDA also cannot show that its compelled misleading "sugars" disclosures are the least restrictive means of achieving a compelling state interest.  In fact, the

FDA's required disclosures, as applied to Tagatose, are in conflict with the FDA's declared interest in identifying for consumers those products which contain elevated levels of conventional sugars, and thus increase the consumption of "empty calories" and lead to obesity and other dietary-related health concerns.

125.   The FDA cannot show that the government has a legitimate interest in requiring Bonumose to disclose Tagatose as an "added sugar" because Tagatose does not contain the same health concerns or risks as conventional sugar.

126.   The FDA also cannot show that requiring Bonumose to disclose Tagatose as an "added sugar" furthers any legitimate government interest. The government may claim a legitimate interest in requiring food manufacturers and retailers to identify conventional sugar as "added sugars" in food products because of the health concerns and risks that are widely known when humans consume conventional sugar. However, that purportedly legitimate government interest is not furthered by requiring Bonumose to disclose tagatose as an "added sugar" because consuming Tagatose does not cause those same health concerns and risks associated with conventional sugar.

~~118.~~127.   Plaintiff Bonumose has no adequate remedy at law or through administrative procedure or, in the alternative, any further effort to obtain an administrative remedy would be futile.

~~119.~~128.   The compulsory labeling requirements related to "added sugars" cause Plaintiff ongoing harm in the form of, *inter alia*, lost economic opportunities, competitive disadvantage imposed through government edict, and constitutional injury in the form of compelled speech that is misleading.

~~120.~~129.   This Court should therefore set aside, declare unlawful, and enjoin the FDA from enforcing the "added sugars" labeling disclosures containing in 21 C.F.R. §101.9(c)(6)(iii)

as applied to Tagatose-containing food products.

## COUNT II:

## VIOLATION OF THE ADMINISTRATIVE ~~PROCEDURES~~PROCEDURE ACT
## (5 U.S.C. § 706(2)(A))

~~121.~~130.      Plaintiff incorporates by reference all allegations contained in paragraph 1 through ~~112~~129, *supra*.

~~122.~~131.      The Administrative Procedure Act ("APA") governs judicial review of administrative action.  A Court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. §706(2)(A).

~~123.~~132.      The Federal Food and Drug Administration ("FDA") is an agency of the executive branch of government.  The FDA's actions are reviewable under the APA (5 U.S.C. § 706).

~~124.~~133.      The FDA's May 18, 2022 denial of Bonumose's citizen petition was a final agency action.

~~125.~~134.      The FDA's denial of Bonumose's petition was arbitrary and capricious.

~~126.~~135.      The FDA's purported explanation for its denial of Bonumose's petition runs contrary to the evidence that FDA accepted as true, ignored, or failed to dispute.

~~127.~~136.      The FDA's denial of the Bonumose petition conflicts with the agency's regulatory interests or goals.

~~128.~~137.      The FDA's denial of the Bonumose petition created an arbitrary and capricious competitive advantage for Bonumose's competitors without a reasonable explanation from the FDA.  The agency's disparate treatment of regulated entities causes Bonumose injury,

has reduced consumer choice, and has injured consumers by presenting to them confusing and misleading labeling statements at the point of sale.

~~129.~~138.        The FDA's refusal to grant an exemption from sugars disclosures in 21 C.F.R. § 101.9.(c)(6) results in violation of 21 U.S.C. § 344(a) by compelling the transmission of misleading information on Tagatose-containing product labels.  *See* 21 U.S.C. § 343(a) (a food is deemed "misbranded" if "its labeling is false or misleading in any particular"); *see also* 21 U.S.C. § 331(a) (prohibiting the introduction into commerce any food that is misbranded).  The FDA's Denial therefore violates 5 U.S.C. § 706(2)(A) because it was "not in accordance with law."

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Set aside, declare unlawful, and permanently enjoin the FDA from enforcing the "sugars" labeling disclosures contained in 21 C.F.R. §101.9(c)(6)(ii) or (iii) as applied to D-tagatose-containing food products.

B.     ~~In the alternative, reverse~~Reverse and remand the FDA's Denial Letter and ~~compel the agency to exercise the same enforcement discretion that the~~Order FDA ~~afforded Allulose-containing products in 2019~~.

C.     Grant ~~such other and~~any further relief as the Court may deem ~~necessary~~warranted under the circumstances.

DATED:  ~~March 9~~June 2, 2023

Respectfully submitted,

45

BONUMOSE, INC.


By      _/s/ Jonathan W. Emord_____
        Jonathan W. Emord (D.C. Bar # 407414)
        EMORD & ASSOCIATES, P.C.
        11808 Wolf Run Lane
        Clifton, VA 20124
        P: (202) 466-6937
        F: (202) 466-6938
        E: jemord@emord.com

        Peter A. Arhangelsky (*pro hac vice*)
        EMORD & ASSOCIATES, P.C.
        2730 S. Val Vista Dr., Bldg. 6, Ste. 133
        Gilbert, AZ 85295

        ~~Attorney~~
        Attorneys for Plaintiff Bonumose, Inc.

46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2023 the foregoing **FIRST AMENDED COMPLAINT**

**FOR DECLARATORY AND INJUNCTIVE RELIEF** was electronically filed using the

Court's CM/ECF system and was sent by that system to the following:

Oliver McDonald, Esq. (oliver.j.mcdonald@usdoj.gov)
Daniel K. Crane-Hirsch, Esq. (daniel.crane-hirsch@usdoj.gov)
U.S. Department of Justice
Civil Division
P.O. Box 386
Washington, DC 20044-0386
Ph: (202) 305-0168
*Counsel for Defendants*


*/s/ Jonathan W. Emord*
Jonathan W. Emord

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF